UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| G.S. ROBINS & CO., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:10CV2245SNLJ |
| ) | |
| ALEXANDER CHEMICAL CORP., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

Plaintiff filed this declaratory judgment action originally in the Associate Circuit Court for the City of St. Louis. On or about December 2, 2010 defendant removed this case to federal court on the basis of diversity jurisdiction. This matter is before the Court on the defendant's motion to dismiss, or in the alternative, to transfer this cause of action to the Northern District of Illinois [6], filed December 7, 2010. Responsive pleadings have now all been filed and the matter is ripe for disposition.

This dispute involves a controversy over obligations concerning certain chemical product cylinder containers that were used to deliver chemical products purchased by plaintiff from defendant over a thirty (30) year period. The question before this Court is whether to try this case here or whether it should be tried in the Northern District of Illinois. Plaintiff, who filed this declaratory judgment action in Missouri before the defendant filed its multicount contract and tort action in Illinois, argues that the "first to file" rule should apply. Defendant disagrees. After careful consideration of the matter, review of the parties' pleadings and submitted exhibits, and relevant caselaw, the Court will not apply the "first to file" rule and will transfer this case to the Northern District of Illinois.

The Declaratory Judgment Act grants the district court the discretion to hear, stay or dismiss a declaratory judgment action brought before it. 28 U.S.C. §2201.[1] The Declaratory

---

[1] Although plaintiff brought this action under Missouri's declaratory judgment act, §527.010 *et. seq.*, upon removal, this action became governed by the federal Declaratory Judgment Act, 28 U.S.C. §2201.

Judgment Act (DJA), states in pertinent part, that "any court of the United States, upon filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. §2201(a). The DJA was "intended to provide a remedy which would `minimize the danger of avoidable loss and the unnecessary accrual of damages and to afford one threatened with liability an early adjudication without waiting until his adversary should see fit to begin an action after the damage has accrued.'" Eveready Battery Co., Inc. v. L.P.I. Consumer Products, Inc., 464 F.Supp.2d. 887, 890 (E.D.Mo. 2006) *quoting* Koch Engineering Co. v. Monsanto Co., 621 F.Supp. 1204, 1206-07 (E.D.Mo. 1985)(*quoting* 10A C.Wright, A. Miller and M. Kane, **Federal Practice and Procedure** §2751 at 569 (1983)).

The plaintiff argues that the Court should retain its DJA action because priority should be given to applying the first-to-file rule. It further argues that the defendant has failed to meet the standard for a Rule 12(b)(6) dismissal and/or there are no compelling reasons to transfer this case to the Northern District of Illinois. Finally, it argues that it only sought a declaration that Missouri's five-year statute of limitations precludes any contract or tort action by the defendant regarding payments for non-returned/lost cylinders and that defendant, in fact, owes the plaintiff a small sum for deposits paid on said cylinders, after defendant had "threatened" it with legal action. Defendant, on the other hand, contends that the first-to-file rule should not be applied in this case because plaintiff filed its DJA action in a bad faith attempt at forum-shopping during settlement negotiations in anticipation of litigation. It further contends that this case does not fulfill the requirements of a declaratory judgment action in that there are not damages accruing; i.e. all damages have accrued and are ascertainable. It seeks dismissal or transfer pursuant to 28 U.S.C. §2201.

In instances wherein parallel litigation has been instituted by the same or different parties in different courts, the "first-filed rule" gives priority to choice of venue of the party who first established jurisdiction. Northwest Airlines v. American Airlines, 989 F.2d. 1002, 1004-1006 (8th Cir. 1993)(internal citations omitted); *see*, Keymer v. Management Recruiters Intel., 169 F.3d. 501, 503 n.2 (8th Cir. 1999) *citing* Northwest Airlines, *supra.*; Anheuser-Busch, Inc. v. Supreme Intel. Corp., 167 F.3d. 417, 419 n.3 (8th Cir. 1999) *citing* Northwest Airlines, *supra.*;

Monsanto Technology LLC v. Syngenta Crop Protection, Inc., 212 F.Supp.2d. 1102-03 (E.D.Mo. 2002) *citing* Northwest Airlines, *supra.*; General Committee of Adjustment GO-386 et. al. v. Burlington Northern Railroad, 895 F.Supp. 249, 251-52 (E.D.Mo. 1995). The purpose of the rule is to conserve judicial resources and avoid conflicting rulings; however, the rule should not be applied in a rigid, mechanical or inflexible manner but rather should serve as a means to facilitate the interests of justice. Id. The prevailing standard is that in the absence of "compelling circumstances", the first-filed rule should apply. Boatmen's First National Bank of Kansas City v. Kansas Public Employees Retirement System, 57 F.3d. 638, 641 (8th Cir. 1995) *citing* Northwest Airlines, *supra.*; Monsanto Technology, at 1102-03; Eveready Battery Co. v. Zinc Products Co., 21 F.Supp.2d. 1060, 1061-62 (E.D.Mo. 1998); Commercial Union Ins. v. Torbaty, 955 F.Supp. 1162, 1163 (E.D.Mo. 1997); General Committee of Adjustment GO-386, at 251-52 (citations omitted).

The Eighth Circuit has identified "two red flags" that indicate the presence of compelling circumstances justifying the non-application of the first-filed rule. Firstly, whether the "first" lawsuit was filed after the other party gave notice of its intention to sue; and secondly, whether the "first" action was for declaratory relief rather than for damages or equitable relief. Northwest Airlines, at 1007; *see*, Anheuser-Busch, Inc. v. Supreme Intel. Corp., at 419; Boatmen's First National Bank of Kansas City, at 641; Eveready Battery v. Zinc Products, at 1062; Commercial Union Ins., at 1163.

Finally, the cases do not have to be identical as to parties and/or issues, but must be related that there is substantial overlap between the cases regarding the issues raised. Monsanto Technology, at 1103; General Committee of Adjustment GO-386, at 252.

Contrary to the plaintiff's assertions, defendant is not seeking a dismissal pursuant to Rule 12(b)(6) Fed.R.Civ.P. or seeking summary judgment by presenting matters outside the pleadings. Defendant is clearly seeking dismissal or transfer pursuant to this Court's inherent discretionary powers to do so under the DJA. Thus, the Court will examine this case under the auspices of a DJA transfer or dismissal.

Upon examination of the facts of this case as presented by the parties, the Court believes that the "red flags" set forth by the Eighth Circuit are present here. In March 2010, defendant sent a letter to plaintiff clearly stating its belief that plaintiff was obligated to return or replace the subject cylinders. Defendant offered to wait until September 1, 2010 for plaintiff to locate and return any missing cylinders and to "settle up" any shortfalls in returned cylinders. In August 2010, defendant again contacted the plaintiff requesting a meeting to discuss the missing cylinder situation. Plaintiff responded positively to the meeting and suggested that a meeting be arranged in late August or September 2010. Emails were exchanged, and a meeting date of September 8, 2010 was agreed upon. On or about September 2, plaintiff cancelled the meeting scheduled for September 8, 2010. Defendant emailed plaintiff expressing displeasure at the meeting being cancelled, its hopes that "a couple of business men can resolve issues more efficiently and effectively than the lawyers can", and requesting plaintiff's position letter.[2] On September 15, 2010 defendant received a letter from plaintiff's attorney requesting documentation regarding the subject cylinders. That same day, defendant responded in telling plaintiff that this information had been provided previously on several occasions and that defendant believed that the repeated requests for information (already provided) were "tactics to further delay the resolution or the return of the assets of Alexander Chemical that either are in your possession or have been lost.".

On or about October 5, 2010 defendant sent a letter to plaintiff expressing its frustrations at getting the cylinder dispute settled. In this letter, defendant stated that "[I]f within 15 days from the date of this letter, Alexander is not either in receipt of the amount of $768,155, or all of the cylinders in question, we will be forced to file the necessary cause of action to enforce our rights." Exhibit 7 to Leavitt Affidavit. On or about October 18, 2010, in response to defendant's October 5th letter, plaintiff contacted defendant about the possibility of still negotiating a settlement of the cylinder dispute and offering to meet with defendant in Chicago on October 25, 27 or 28. Exhibit 8 to Leavitt Affidavit. Pursuant to a telephone communication, the parties

---

[2]Plaintiff contends that the September 8th meeting was cancelled by mutual agreement; however, it offers no support for this contention. However, the affidavit of Gillman Leavitt, President of defendant Alexander Chemical Corp. and the email sent belie this contention.

4

agreed to meet on November 1, 2010 in defendant's Downer Grove, Illinois office to discuss settlement of the cylinder dispute.

Meanwhile, on or about October 27, 2010, plaintiff completed its own accounting and determined that it did not owe defendant any monies but instead defendant owed plaintiff a small sum of money. It further decided that the Missouri statute of limitations was applicable. Having made these determinations, plaintiff "realized that Alexander would not agree with its position, and that, given the vast disparity between the positions of the parties, settlement discussions were not likely to be fruitful." Plaintiff's Response [14], pg. 3. Plaintiff filed its state declaratory action on October 28, 2010. On October 29, 2010 plaintiff contacted the defendant to cancel the November 1st meeting without disclosing the filing of the state court action. On or about November 3, 2010 defendant was served with plaintiff's state court complaint.

On or about December 2, 2010 defendant filed its multicount tort and contract action regarding the disputed cylinders in the United States District Court for the Northern District of Illinois.

Firstly, plaintiff clearly had notice of defendant's intent to file suit prior to its filing of the state declaratory judgment action. Secondly, defendant filed its declaratory judgment action in the midst of settlement negotiations. It knew that defendant preferred to settle the matter than file suit, and only "threatened" to file suit out of frustration with plaintiff's perceived delaying tactics. In fact, following the October 5th letter in which a lawsuit was "threatened", defendant was still willing to meet with the plaintiff to settle the case. Furthermore, it was not due to any action by defendant, but rather the plaintiff's own assumptions about whether defendant would be willing to still consider settling given plaintiff's "newly-discovered" facts that precipitated the defendant's suspect filing of its lawsuit first. This is especially evident by its sudden cancellation of the November 1st meeting without any notice of the filing of its declaratory judgment action. A court should encourage good faith settlement negotiations instead of rushing to the courthouse, and "[a]pplication of the first-filed rule should not penalize parties for their efforts to settle matters out of court." Eveready Battery v. Zinc Products Co., at 1062 *quoting* Boatmen's First National Bank of Kansas City, at 144. Furthermore, "[e]vidence of insufficient notice of a change in the

5

first-filing party's position on the dispute prior to filing of the first action is indicative of a rush to the court house" demonstrating compelling reasons to preclude application of the first-to-file rule. *See*, Eveready Battery v. Zine Products Co., at 1062 *quoting* Boatmen's National Bank of Kansas City, *supra*.

Finally, plaintiff's declaratory judgment action does not further the goals of the DJA, and serves no purpose than to deprive the defendant of its choice of forum and time of suit to litigate a potential claim for damages that plaintiff was clearly apprised of for over seven months prior to filing its declaratory judgment action. *See*, Creative Compounds, LLC v. Sabinsa Corp., 2004 WL 2601203, *2 (E.D.Mo. November 9, 2004)(facts of case clearly showed that plaintiff did not face a defendant that intended to delay legal action while damages unnecessarily accrued). The plaintiff has not identified any current loss it is suffering which can be avoided by this Court's declaration of the parties' rights, nor has it identified any unnecessary accrual of damages that can only be addressed by a declaratory judgment action. *See*, Eveready Battery v. L.P.I. Consumer Products, at 890-91. It is clear to this Court that plaintiff's declaratory judgment action is nothing more than a preemptive strike meant to thwart defendant's anticipatory lawsuit for damages. The filing of a declaratory judgment action, during settlement talk, is suspect; and as such, the Court will not apply the first-to-file rule. *See*, Eveready Battery v. L.P.I. Consumer Products, *supra.*; Beard v. Diamond, 2010 WL 1644686 (E.D.Ark. April 20, 2010).

The next question is whether to dismiss this case or transfer the case to the Northern District of Illinois. The Court has considered the traditional factors relating to a transfer under 28 U.S.C. §1404(a) and finds that said factors support transferring this action to the Northern District of Illinois. The parties do not dispute that proceeding in the Northern District of Illinois will not significantly inconvenience the parties or the fact witnesses to this action. It also appears that documentary evidence is as easily available in the Northern District of Illinois as it is here. Finally, although the plaintiff appears to believe that there is no dispute that the Missouri statute of limitations is applicable to the defendant's tort and contract claims, this Court is not so convinced, and is certain that the Northern District of Illinois is quite capable of addressing that

issue. Finally, it further appears that the Northern District of Illinois has already proceeded further in the "second-filed" case than the instant case has in this Court.

Accordingly,

**IT IS HEREBY ORDERED** that the defendant's motion to dismiss, or in the alternative, to transfer to the Northern District of Illinois [6] be and is **GRANTED IN PART** and **DENIED IN PART**. This case shall be **TRANSFERRED** to the United States District Court for the Northern District of Illinois. That part of the motion requesting dismissal of this case is denied without prejudice pending transfer of the case to the Northern District of Illinois.

**IT IS FINALLY ORDERED** that the Clerk of the Court shall transfer this cause of action to the United States District Court for the Northern District of Illinois pursuant to 28 U.S.C. §1404(a).

Dated this ___14th___ day of April, 2011.

_____
UNITED STATES DISTRICT JUDGE